UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ARCHIE DUNKLIN, JR., | |
|---|---|
| Petitioner, | |
| v. | Case No. 07-cv-612-JPG |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Archie Dunklin, Jr.'s ("Dunklin") motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) and its memoranda (Docs. 2 & 3). The government has responded to the motion (Doc. 10).

**I. Background**

In March 2004, Dunklin was indicted on one count of conspiring to distribute and possess with intent to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). In December 2004, a superseding indictment was returned, naming Reginald Walls as a coconspirator but adding no new charges against Dunklin.

Dunklin was represented at trial by attorney John Abell ("Abell"). At trial, the government introduced, among other evidence, two audio tape recordings of conversations between Dunklin and Charles Shye, who was working as a government confidential informant at the time. In the recorded conversations, Shye purchased crack cocaine from Dunklin. Shye did not testify at trial and was not subject to cross-examination by Abell. In addition, Reginald Walls and Sedric Anderson testified against Dunklin regarding his drug activities. On March 23, 2005, a jury found Dunklin guilty of the crime charged and made a specific finding that Dunklin conspired to distribute more than 50 grams of crack cocaine.

On June 28, 2005, the Court held a sentencing hearing. Dunklin did not object to the Presentence Investigation Report ("PSR") prepared by the Probation Office. However, in response to the government's objection that his relevant conduct should be higher than that recommended in the PSR, Dunklin argued that Walls and Anderson were not reliable because their testimony was not corroborated. In spite of Dunklin's argument, the Court found Walls and Anderson credible and, relying on their trial testimony, found by a preponderance of the evidence that Dunklin's relevant conduct was 288 grams of crack cocaine, in the category of at least 150 grams but less than 500 grams of crack cocaine, which under United States Sentencing Guideline Manual[1] ("U.S.S.G.") § 2D1.1 yielded a base offense level of 34. The Court further found that Dunklin was a career offender under U.S.S.G. § 4B1.1 based on prior drug or violent felony convictions, which raised his offense level to 37. Considering Dunklin's criminal history category of VI, established by his career offender status under U.S.S.G. § 4B1.1, this yielded a sentencing range of 360 months to life in prison. The Court sentenced Dunklin to serve 360 months in prison, within the statutory range of 20 years to life established by Dunklin's conviction of conspiring to distribute more than 50 grams of crack cocaine after having been convicted for a prior felony drug offense. *See* 21 U.S.C. §§ 841(b)(1)(A) & 851.

Dunklin appealed to the Seventh Circuit Court of Appeals arguing, among other things, that the admission of the audio tape recordings violated his rights under the Confrontation Clause to cross-examine witnesses against him. *See Crawford v. Washington*, 541 U.S. 36 (2004). *Crawford* held that a criminal defendant's Sixth Amendment Confrontation Clause rights are violated where testimonial hearsay is admitted against him unless the witness is

---

[1] Unless otherwise noted, the references to the guidelines in this order are to the 2004 United States Sentencing Guidelines Manual.

unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 68. The Court of Appeals held that neither Dunklin's nor Shye's recorded statements were hearsay because they were not offered for the truth, and Dunklin's statements were not testimonial in nature. *United States v. Tolliver*, 454 F.3d 660, 665-66 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 1019 (2007). Consequently, their admission did not violate the Confrontation Clause or the principles announced in *Crawford*. *Id.*

The Court of Appeals also addressed the argument that the audio tape recordings were not properly authenticated and rejected it, noting that authentication by the law enforcement officer who supervised the controlled buys and the recordings and was familiar with Dunklin's and Shye's voices was sufficient. *Id.* at 666 n. 4. The Court of Appeals affirmed Dunklin's conviction and sentence on July 19, 2006, and issued its mandate on August 10, 2006. Dunklin filed a petition for a *writ of certiorari* from the Supreme Court, which it denied on January 8, 2007. *Dunklin v. United States*, 127 S. Ct. 1019 (2007).

Dunklin filed the pending § 2255 on August 27, 2007, within the one-year limitations period imposed in § 2255. In his § 2255 motion, Dunklin asks the Court to vacate his sentence because Abell was constitutionally ineffective in violation of his Sixth Amendment right to effective assistance of counsel in the following ways: (1) he failed to object to the admission of audio recordings used against Dunklin at trial in the absence of testimony from the recorder of the conversation, (2) failed to seek severance from codefendant John Tolliver on the grounds that the two defendants had conflicting defenses, (3) failed to call as a witness and examine Shye in light of the fact that his voice was recorded on the audio recording, and (4) failed to properly challenge the relevant conduct amount found at sentencing.

In a supplemental memorandum filed September 10, 2007, Dunklin adds the additional

3

charge that (5) Abell was ineffective for failing to ask for an instruction informing the jury that there can be no criminal conspiracy between the defendant and government agents. *See Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965).

In response, the government argues that there was no constitutionally ineffective assistance of counsel.

## II.   § 2255 Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted).

It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt*, 83 F.3d at 816.  A defendant cannot raise in a § 2255 motion nonconstitutional issues that he failed to raise on direct appeal regardless of cause and prejudice.

4

*Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

Neither is a § 2255 motion necessarily a second chance at a successful appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). The Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law. *Id.*; *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

## III.  Analysis

The Court finds that Dunklin has not presented any evidence or argument meriting either a hearing or relief under § 2255. The Court addresses each of Dunklin's ineffective assistance of counsel arguments in turn.

### A.  Ineffective Assistance Standard

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to

5

specific acts or omissions of his counsel. *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

B. <u>Application to this Case</u>

1. <u>Failure to Object to Admission of Audio Recordings</u>

Abell was not deficient for failing to object better to the admission of the audio tape recordings on the grounds that the person making those recordings was not called to testify. The Court notes that Abell did object to the authentication of the tapes by the law enforcement officer, albeit after the jury had heard one of the recordings. However, the Court of Appeals has already decided that the recordings were sufficiently authenticated, *see United States v. Tolliver*, 454 F3d 660, 666 n. 4 (7th Cir. 2006), so any argument by Abell to the contrary during the trial would have been meritless. Defense counsel is not deficient for failing to make a frivolous or

6

losing argument. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001). By the same token, even if Abell had made his argument earlier or in a different way at trial, the Court would still have rejected it. Thus, Dunklin suffered no prejudice from Abell's approach to the admissibility of the audio tape recordings. Relief under § 2255 is not appropriate on this basis.

### 2. Failure to Seek Severance from Tolliver

Abell was not deficient for failing to seek a severance from Tolliver on the basis of mutually antagonistic defenses.

Federal Rule of Criminal Procedure 8(b) allows the joinder of two or more defendants in a single trial.[2] There is a preference in the federal system for joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials promote efficiency and go far to prevent the scandal and inequity of inconsistent verdicts among co-defendants. *Id.* However, Federal Rule of Criminal Procedure 14(a) provides that a court may sever co-defendants' trials if a defendant or the government is prejudiced by such a joinder.[3] Working together, "Rules 8(b) and 14 are designed 'to promote economy and efficiency and to

---

[2]Rule 8(b) provides:

**Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

[3]Rule 14(a) provides:

**Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

7

avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" *Id.* at 540 (quoting *Bruton v. United States*, 391 U.S. 123, 131 n. 6 (1968) (internal quotations omitted)).

A court should grant severance under Rule 14(a) only if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Rule 14(a) leaves the determination of risk of prejudice from a joint trial and any remedy that may be necessary to the sound discretion of the district court. *Id.* A defendant is not entitled to a separate trial simply because he might have a better chance of acquittal if tried alone. *Id.* at 540. Serious risks that may warrant severance occur, for example, when (1) many defendants are tried together and have markedly different degrees of culpability, (2) evidence admissible only against a co-defendant may be inadvertently or erroneously considered by the jury against the defendant, (3) exculpatory evidence is unavailable to a defendant if tried with co-defendants. *Id.* at 539. Mutually antagonistic theories of defense do not *per se* pose a risk of unfair prejudice that requires severance. *Id.* at 538. Furthermore, many times any potential prejudice to a defendant may be avoided by a limiting instruction to the jury, thereby avoiding the need for severance. *Id.* at 539.

Dunklin has pointed to nothing concrete that Abell could have relied on as a basis to request severance from Tolliver under these standards. Tolliver was charged in the same indictment with the same crime, so a joint trial was the most efficient way to try this case. Furthermore, any incidental spillover of evidence was cured by the Court's instruction to the jury to give each defendant separate consideration and to decide each defendant's case on the evidence presented against him. Dunklin's vague allegations of conflicting defenses are not

enough to show Abell erred by failing to request severance, especially where a quick review of the trial transcript reflects that Dunklin's defense – that the government had not proved its case – and Tolliver's defense – that the government had not proved its case and that he was a mere addict, not a dealer – were consistent with each other. In the absence of any basis for a severance motion, the Court cannot find Abell was deficient for failing to make one. "It is not ineffective assistance for counsel to not file a meritless motion." *United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990). Furthermore, in the absence of a valid basis for severance, Dunklin cannot show a reasonable probability that the result of his trial would have been different. Relief is not warranted on this basis.

        3.      <u>Failure to Call Shye as a Witness</u>

Abell was not deficient for failing to call Shye as a witness and to examine him about the audio tape recordings.

To the extent this argument mirrors Dunklin's argument on direct appeal that his Confrontation Clause rights were violated by the admission of the audio tape recordings without an opportunity to cross-examine Shye, the Court of Appeals has already rejected that argument on direct appeal, and the Court need not reexamine it here. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Again, Abell was not deficient by, and Dunklin did not suffer from, failing to make a losing argument regarding the Confrontation Clause.

To the extent this argument is simply a charge that Dunklin failed to call Shye as a witness, when a § 2255 petitioner faults his attorney for failing to present certain evidence at trial, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774

(7th Cir. 2003).

Dunklin argues that Abell should have called Shye as a witness, but he utterly fails to say what Shye would have said that would have created a reasonable probability that the result of the trial would have been different. For all the Court knows, Shye might have reinforced that the incriminating recorded conversations actually happened. In the absence of any indication that Shye would have provided some testimony favorable to Dunklin, the Court cannot say Abell was deficient for failing to call him or that the absence of his testimony prejudiced Dunklin's case.

### 4. Failure to Challenge Relevant Conduct

Abell was not deficient because of the way he challenged Dunklin's relevant conduct at sentencing. He did not object to the relevant conduct found in the PSR because it appeared at the time, and indeed proved to be true, that the relevant conduct would not affect Dunklin's guideline range in light of his career offender status. It is within the realm of professionally competent assistance to refrain from objecting to a relevant conduct measurement when that calculation will play no role in the guideline calculation.

However, when the government persisted in objecting to the relevant conduct, apparently seeking a back-up finding in case Dunklin turned out not to be a career offender, Abell argued that the testimony of Walls and Anderson was not reliable because it was not corroborated. That the Court rejected that argument was not due to any deficiency by Abell. Dunklin has pointed to no other argument Abell could have made that would have had a reasonable probability of causing the Court to reach a different relevant conduct calculation.

Finally, even if Abell attempted differently to convince the Court of a lower relevant conduct figure, it would not have made a difference to Dunklin's guideline range, which was determined by his career offender status, not his relevant conduct. Thus, Dunklin cannot show

any prejudice from Abell's performance.

To the extent Dunklin might be raising a challenge to Abell's failure to object to the Court's finding of a relevant conduct amount that was not charged in the indictment and found by a jury beyond a reasonable doubt, that argument must fail in light of *United States v. Booker*, 543 U.S. 220 (2005), which was decided several months before Dunklin's sentencing. *Booker* made the sentencing guidelines advisory, freeing judges to continue to find relevant conduct by a preponderance of the evidence and compelling them then to consider the appropriate guideline range in light of the other factors in 18 U.S.C. § 3553(a). *Id.* at 226-27; *see United States v. Owens*, 441 F.3d 486, 490 (7th Cir. 2006). The resulting sentence is acceptable unless it exceeds the statutory maximum authorized by the facts found by a jury beyond a reasonable doubt, which Dunklin's does not. Abell was not deficient for failing to object to the Court's finding of relevant conduct by a preponderance of the evidence.

For these reasons, Abell's performance at Dunklin's sentencing proceedings do not warrant § 2255 relief.

### 5. Failure to Ask for Jury Instruction

Abell was not deficient for failing to ask for an instruction informing the jury that there can be no criminal conspiracy between the defendant and government agents. It is true that a defendant cannot be convicted of conspiring only with government agents. *United States v. Duff*, 76 F.3d 122, 127 (7th Cir. 1996); *see Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965). This is because "[a] conspiracy is an agreement between two or more people to commit an unlawful act, and there is no real agreement when one 'conspires' to break the law only with government agents or informants. The elements of the crime are not satisfied unless one conspires with at least one true co-conspirator." *United States v. Mahkimetas*, 991 F.2d 379, 383

11

(7th Cir. 1993) (internal quotations and citations omitted).

A jury instruction is proper if it is adequately supported by the record and is a fair and accurate summary of the law. *United States v. Stott*, 245 F.3d 890, 903(7th Cir. 2001); *United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000); *United States v. Wimberly*, 79 F.3d 673, 676 (7th Cir. 1996). However, a defendant is only entitled to an instruction on a particular theory of defense if "1) the instruction is a correct statement of the law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge, and 4) a failure to provide the instruction would deny a fair trial." *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003) (citing *United States v. Chavin*, 316 F.3d 666, 670 (7th Cir. 2002)).

In this case, Dunklin suffered no prejudice from Abell's failure to request such an instruction. Here, there was overwhelming evidence that Dunklin conspired with Walls, Tolliver, Anderson and others to sell crack cocaine at times when they were not functioning as government agents. While there was a slim possibility that the jury could have considered the two recorded transactions with Shye while Shye was acting as a government informant when it found Dunklin guilty of the conspiracy, in light of the overwhelming evidence that Dunklin conspired with Walls, Tolliver, Anderson and others outside of the two recorded buys, there is no way a reasonable jury could have found that Dunklin *only* conspired with Shye. Thus, there is no reasonable probability that the result of Dunklin's trial would have been any different had Abell asked for and had the Court instructed the jury that a defendant cannot be convicted of conspiring with government agents. Section 2255 relief is not warranted on this basis.

## IV. Conclusion

For these reasons, the Court rejects Dunklin's ineffective assistance of counsel arguments as a basis for § 2255 relief. Accordingly, the Court **DENIES** Dunklin's § 2255 motion (Doc. 1)

and its supplemental memoranda (Docs. 2 & 3) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: May 21, 2008**

               s/ J. Phil Gilbert
               **J. PHIL GILBERT**
               **DISTRICT JUDGE**